Citation Nr: 1829591 
Decision Date: 06/18/18 Archive Date: 07/02/18

DOCKET NO. 08-05 445 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUES

1. Entitlement to an initial disability rating in excess of 10 percent for degenerative joint disease of the left hip on and after June 22, 2006.

2. Entitlement to service connection for headaches, as due to head trauma. 


REPRESENTATION

Veteran represented by: Deanne L. Bonner Simpson, Attorney


ATTORNEY FOR THE BOARD

Ryan Frank, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the Marine Corps from January 1976 to July 1977.

This matter originally came before the Board of Veterans' Appeals (Board) on appeal from October 2006 and December 2007 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina. In the October 2006 rating decision, in pertinent part, the RO denied service connection for degenerative joint disease of the left hip, headaches from a head injury, and a lower back injury. In the December 2007 rating decision, the RO granted service connection for degenerative joint disease of the left hip and assigned a 10 percent rating, effective June 22, 2006.

In an April 2009 decision, the Board denied a disability rating in excess of 10 percent for degenerative joint disease of the left hip, an effective date prior to June 22, 2006 for service connection for degenerative joint disease of the left hip, and service connection for headaches and residuals of an injury to the low back. The Veteran appealed the Board's decision with respect to all issues but the left hip effective date to the Court of Appeals for Veterans Claims (Court). In a February 2011 memorandum decision, the Court vacated the Board's decision with regard to the left hip rating issue and the headache and low back issues and remanded the case to the Board for additional development. 

In an October 2011 decision, the Board remanded the left hip rating issue and the headache and low back issues for further development. 

In a December 2017 rating decision, the Agency of Original Jurisdiction (AOJ) granted service connection for a lower back injury. As this represents a full grant of the benefit sought with respect to this issue, it is no longer before the Board. 
Grantham v. Brown, 114 F.3d 1156 (Fed. Cir. 1997).

In the December 2017 rating decision, the AOJ also granted separate compensable ratings for impairment of the left thigh and limitation of extension of the left thigh. The Veteran has not appealed those issues and they are not before the Board. 

The issue of entitlement to an increased rating for degenerative joint disease of the left hip is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ.


FINDING OF FACT

The preponderance of the evidence is against finding that the Veteran has headaches that are related to active military service or events therein, including as due to head trauma.


CONCLUSION OF LAW

The criteria for establishing service connection for headaches have not been met. 38 U.S.C. §§ 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSION

Other than the contentions raised before the Court at the time of its February 2011 decision, neither the Veteran nor his attorney have raised any other issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. § 1131; 38 C.F.R. § 3.303. Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).

Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). 

The benefit of the doubt rule provides that a veteran will prevail in a case where the positive evidence is in a relative balance with the negative evidence. Therefore, the Veteran prevails in a claim when (1) the weight of the evidence supports the claim or (2) when the evidence is in equipoise. It is only when the weight of the evidence is against the claim that the claim must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

The Veteran contends that he has headaches as a result of a head injury during his active duty service. 

A February 1976 service treatment record notes an abrasion on the Veteran's head. The Veteran reported that he was hit in the head with a rifle while drilling. On examination, the bleeding had stopped and there was no point tenderness, but some edema. 

During the Veteran's July 1977 separation examination, the examiner did not note headaches. At the time of the examination, the Veteran denied any history of head injury or frequent or severe headaches. 

During a September 2001 VA treatment appointment, the Veteran reported severe headaches for the past two days. He did not report any prior history of headaches. 

In an August 2006 statement, the Veteran reported that his "headaches are still present" but provided no further details about their history. 

The Veteran was afforded a VA examination in November 2007. The Veteran reported headaches lasting all day, two to three times a week. The examiner noted a headache diagnosis in the Veteran's treatment records but, in searching treatment records for the past seven years, found no report of or treatment for headaches. As stated above, there was such a report in September 2001. The examiner noted the abrasion during the Veteran's active duty service but also noted that he did not lose any time from training and reported no symptoms at that time other than a small abrasion. The examiner diagnosed "a tension-type headache, which is not prostrating nor is it disabling." The examiner opined that the Veteran's headache was not caused by or the result of his in-service injury but provided no rationale for this opinion. In its February 2011 decision, the Court found that this examination was inadequate because it was based on an inaccurate factual premise. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993). In addition, the Board notes that, because "most of the probative value of a medical opinion comes from its reasoning," this opinion is of little probative value. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). 

The Veteran was afforded an additional VA examination in December 2011 with Dr. A. B. The Veteran did not recall when his headaches had their onset. The examiner diagnosed tension headaches but did not opine as to their etiology. 

In July 2013, the December 2011 VA examiner provided an addendum opinion as to the etiology of the Veteran's headaches. The examiner noted the Veteran's symptoms as reported in the February 1976 service treatment record and that there was no mention of loss of consciousness or any neurological symptoms after the injury. The examiner opined that "[s]uch an injury is likely to result in transient pain and the veteran would be expected to make a full recovery without long term sequelae." For this reason, and because there was no documentation to the contrary, the examiner opined that it was less likely than not that the Veteran's headaches arose during his active duty service or were causally connected to that service. 

In a January 2018 statement, the Veteran contended that, at the time of his separation examination, he should have been permitted to review his service treatment records before reporting his medical history. The Veteran also offered to physically demonstrate the circumstances of his in-service injury. 

The Veteran is competent to report on matters observed or within his personal knowledge. See Layno v. Brown, 6 Vet. App. 465, 470 (1994). He is competent to report headaches and to describe when he began to experience them. However, in this case he is not competent to provide an etiology opinion for his headaches. The Board must determine on a case-by-case basis whether a particular condition is the type of condition that is within the competence of a lay person to provide an opinion as to etiology. Kahana v. Shinseki, 24 Vet. App. 428 (2011). The Veteran in this case is not shown to possess any pertinent medical training or expertise that would make him competent to render an opinion on the etiology of any current headaches or to express an opinion about when his symptoms first warranted any medical diagnosis. Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). Thus, the Veteran's opinion that his current headaches are etiologically related to active duty service, including as due to his head injury, is not competent evidence and it cannot be assigned any probative weight. Rather, the medical findings and opinions of trained medical professionals warrant greater probative weight than the Veteran's lay contentions in this case. 

In addition, the Board has the discretion to make credibility determinations and otherwise weigh the evidence being submitted, including the Veteran's lay statements. See Buchanan v. Nicholson, 451 F.3d 1331, 1335 (Fed. Cir. 2006); Barr v. Nicholson, 21 Vet. App. 303 (2007). The Board may take the lack of contemporaneous medical records into account when weighing a veteran's lay evidence. See Buchanan, 451 F.3d at 1336. The Board acknowledges the Veteran's contention that he might not have remembered his full medical history at the time of his separation examination. The Board also does not doubt that the Veteran sustained a head injury in February 1976. The question before the Board is whether that injury had lasting effects. Even if, at the time of the July 1977 separation examination, the Veteran did not remember the details of his past head injury, he should still have been able to report "frequent and severe headaches" if they were an ongoing issue at the time of that examination. Instead, he specifically denied them. This is highly probative evidence that the Veteran was not experiencing frequent or severe headaches at the time of separation. 

Additionally, during his September 2001 VA treatment appointment, the Veteran reported that his headaches had their onset two days prior and said nothing about any prior history of headaches. Under these circumstances, to the extent that the Veteran's lay statements can be interpreted as contentions that his headaches had their onset during his active duty service, the Board finds that those lay recollections decades after the fact are outweighed by his lay reports at the time of his separation examination and at the time of his first documented headaches. 

No treatment provider or examiner has found an etiological relationship between the Veteran's headaches and his active duty service, including to his in-service head injury, and the December 2011 VA examiner's rationale against a finding of service connection as expressed in his July 2013 addendum opinion is convincing. 

Because the preponderance of the evidence is thus against finding that the Veteran's headaches are etiologically related to his active duty service, entitlement to service connection for headaches is denied.

In reaching the conclusions above, the Board considered the doctrine of reasonable doubt, however, as the preponderance of the evidence is against the Veteran's claim, the doctrine is not for application. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 


ORDER

Service connection for headaches is denied.


REMAND

In its February 2011 memorandum decision, the Court found that the November 2007 VA examination of the Veteran's left hip was inadequate because the examiner found functional impact due to flare ups but did not quantify the specific amount of functional loss during flare ups or after repetition over time. In its October 2011 decision, the Board instructed the AOJ to afford the Veteran an additional examination. The Board specified that the functional impact of flare ups or repetition over time "should also be portrayed, if feasible, in terms of the degree of additional range of motion loss due to these factors." 

The Veteran was afforded an additional VA examination in December 2011. The examiner noted the Veteran's report of functional loss due to flare ups but did not attempt to quantify that loss. The AOJ instructed the examiner to provide an addendum opinion to quantify the impact of flare ups but, in his November 2012 addendum opinion, the examiner stated only that "[a]ll previously mentioned objective clinical indications of pain or painful motion, weakened movement, fatigability, or incoordination, including instances when these symptoms flare up or when the hip is used repeatedly over a period of time" were already included in the December 2011 examination report. The AOJ attempted again to obtain an addendum opinion that would comply with the Board's instructions. In his July 2013 addendum opinion, the examiner stated that "[t]here was no additional limitation of hip ROM with repetitive testing as indicated on my exam" but again made no attempt to quantify the functional impact of flare ups.

The AOJ afforded the Veteran an additional examination by a different VA examiner in July 2017. This examiner found that she could not quantify the functional impact of flare ups or repeated use over time without resort to speculation because the examination was not conducted during a flare up or after repetition over time. Although the Board regrets the additional delay in the Veteran's case, because this rationale is insufficient, a remand for an additional examination is again necessary.


Accordingly, the case is REMANDED for the following action:

1. Arrange for the Veteran to have an examination by an appropriate clinician who has not previously examined the Veteran for the purpose of determining the current severity of his degenerative joint disease of the left hip. The electronic claims file must be made available to the examiner for review, and the examination must reflect that such review has been accomplished. 

The examiner is to provide a detailed review of the Veteran's pertinent medical history, current complaints, and the nature and extent of any symptoms of degenerative joint disease of the left hip. 

The examiner should consider the Veteran's reports of flare ups and portray any related functional loss in terms of additional range of motion loss. 

If the examiner is unable to do so, the examiner must explain why in order for the examination to be adequate. The examiner is advised that merely stating that the examination did not take place during a flare up is not a sufficient explanation.

A complete rationale for any opinion expressed must be provided. If the examiner is unable to provide any requested opinion, that fact must be stated and the reasons why an opinion cannot be provided explained. 

2. Readjudicate the claim. If the decision is adverse to the Veteran, issue a Supplemental Statement of the Case and allow the applicable time for response. Then, return the case to the Board. 

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).




______________________________________________
D. Martz Ames
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs